IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| PENNY PERKINS,<br><br>                         Plaintiff,<br><br>v.<br><br>SECURE TRANSPORTATION SERVICES, INC. and JOHN COOK,<br><br>                         Defendants. | **COMPLAINT**<br>(JURY TRIAL DEMANDED) |

Plaintiff, complaining of Defendants, alleges as follows upon her information and belief and seeks all remedies available to her under Title IX of the Organized Crime Control Act of 1970, 18 U.S.C. § 1964 ("***Civil RICO Claim***"); the anti-retaliation provisions of the False Claims Act, 31 U.S.C. §3730(h) ("***FCA Retaliation Claim***"); the South Carolina Payment of Wages Act, S. C. Code Ann. §§ 41-10-10 et. al. ("**SCPWA**"); and alternatively, under South Carolina's common law ("***Wrongful Discharge Claim***").

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Penny Perkins ("***Perkins***") is a citizen and resident of South Carolina.

2. Secure Transportation Services, Inc., ("***STS***") is a domestic corporation that maintains its principal place of business in York County, South Carolina.

3. John Cook ("***Cook***") is a citizen and resident of South Carolina.

4. At all times relevant to this Complaint:

    a. Cook has remained a corporate officer of Secure Transportation Services, Inc. and he has served as its "President;"

      b. Cook has exercised day-to-day control over Secure Transportation Services, Inc.;

      c. Cook has remained directly involved in the employment, supervision and payment of Defendant STS' employees, including Perkins; and

      d. Upon information and belief, Cook has owned all or a majority of the shares of STS.

5. Likewise, Plaintiff intends to name as additional defendants any other person or entity that is either a joint employer, or an alter ego of any of the Defendants, or who is part of a joint venture or de facto partnership with any of the Defendants, or who is an entity that is amalgamated with and the part of a single business enterprise with any of the Defendants.

6. This court possesses subject matter jurisdiction over the Civil Rico Claim and FCA Retaliation Claim pursuant 28 U.S.C. 1331, and it possess jurisdiction over the Wrongful Discharge Claim pursuant to 28 U.S.C. § 1367.

7. Venue is proper in in this division as the most substantial part of the events or omissions giving rise to Plaintiff's claims occurred in York County, South Carolina.

**DEFENDANTS' PARTICIPATION IN GOVERNMENT HEALTH INSURANCE PROGRAMS**

8. Defendants are engaged a private, for-profit business interstate enterprise that engages in ambulance services for patients funded in large part by state and federal health insurance programs.

9. Defendants enter contracts with various health care facilities to primarily provide repetitive, scheduled non-emergent ambulance transports (***"Non-Emergent***

*Transports*") for patients to these health care facilities.

10. These patients Defendants serve are typically Medicare and Medicaid beneficiaries, and Defendants bill state and federal payors for its ambulance services and wheelchair and stretcher transport services.

11. For example, Defendants provide transport services to Medicare beneficiaries receiving dialysis, transporting them between their residence and the dialysis clinic.

12. The requirements that Defendants must follow when billing Medicaid for ambulance transports can be found, in part, in the SCDHHS Provider Manual for Ambulance Services, which is incorporated herein by reference.

13. South Carolina law requires that Medicaid beneficiaries be transported in certified ambulances pursuant to South Carolina law.

14. Further, to bill Medicaid, the South Carolina Department of Health and Human Services ("**SCDHHS**") requires that Defendants use ambulance drivers that are certified to operate the ambulance and provide the specific transport services.

15. For example, to transport a wheelchair-bound patient, Defendants must use an ambulance driver who is wheelchair certified, and that certified driver must sign the ambulance run log for the Defendant to be qualified for payment by Medicaid for that service.

16. The payment Defendants receive from Medicaid for providing Medicaid beneficiaries wheelchair services is significantly lower than the payment for stretcher services, which incentives Defendants to engage in fraudulent activity.

17. To bill Medicare for Non-Emergent Transports, Defendants must

complete a Centers for Medicare & Medicaid Services ("**CMS**") prior-authorization form ("**Prior-Authorization Form**") and obtain a physician certification statement certifying that the transportation is medically necessary ("**PCS**").

18. Defendants must obtain a PCS signed by the patient's attending physician. If Defendants are unable to obtain a signed PCS from the attending physician, Defendants may obtain a signed certification may also be obtained from a Physician Assistant, Nurse Practitioner, Clinical Nurse Specialist, Registered Nurse or Discharge Planner who has personal knowledge of the beneficiary's condition at the time the ambulance service is ordered or furnished.

19. Defendants must complete the Prior-Authorization Form and PCS prior to any transport and must include all relevant documentation to support CMS coverage of the transport. Defendants may request up to forty (40) round trips in a sixty (60) day period. Defendants must submit the Prior-Authorization form, including the PCS, to the applicable CMS Medicare Administrative Contractor ("**MAC**") for authorization using electronic communications.

20. If authorized by the MAC, Defendants may provide the number of approved transports during the sixty (60) day period. For any transports above the approved number and for any new sixty (60) day periods, an additional Prior-Authorization Form must be submitted.

21. The Medicare rules and regulations for Non-Emergent Transports are found in 42 C.F.R. § 410.40 et. al, Medicare Manuals and policies, procedures and requirements of Palmetto GBA, South Carolina's MAC.

### PERKINS' EMPLOYMENT AND UNLAWFUL TERMINATION

22. Perkins was STS' first employee and helped Cook start the company on or about April 1, 2015.

23. Perkins served as Operations Director from the start of the company and worked seven (7) days per week and well over forty (40) hours per week. At the end of her employment, Perkins' compensation was $68.99 an hour and she was paid based upon a forty (40) hour work week, resulting in a gross bi-weekly salary of approximately $5,519.23.

24. Pursuant to her job duties, Perkins oversaw virtually all operations of STS including, but not limited to billing, human resources, transportation scheduling and payroll.

25. During the relevant time, Defendants only employed two (2) ambulance drivers who were certified by Medicaid - Mitchell Scott Perkins ("Mr. Perkins") and Barbara Stewart ("Ms. Stewart"). Ms. Stewart was certified only to transport wheelchair patients, not stretcher payments.

26. In addition, only two (2) of STS' ambulances were certified to transport Medicaid beneficiaries.

27. During her employment, Perkins learned that Defendants were knowingly violating Medicaid and Medicare requirements for ambulance transports and transmitting false certifications through electronic communications in exchange for payments by governmental health care programs.

28. Specifically, when Defendants received a Medicaid wheelchair transport request, Cook would personally deny the wheelchair request and upgrade the transport to

a stretcher transport, even though the patient did not meet eligibility criteria for stretcher transport. Defendants then submitted falsified forms using electronic communication to fraudulently obtain payment for disallowed services.

29.     Likewise, Perkins often saw Cook forge Ms. Stewart's and Mr. Perkins' name as having been the certified driver to satisfy Medicaid requirements and have the transport paid by Medicaid. Defendants then submitted falsified forms using electronic communication to obtain fraudulently obtain payment for disallowed services.

30.     Perkins also learned that Defendants required their ambulance drivers to transport Medicaid beneficiaries in non-certified ambulances in violation of South Carolina law.  Defendants then submitted falsified forms using electronic communication to obtain fraudulently obtain payment for disallowed services.

31.     Immediately prior to her termination, Perkins saw Cook forging physician names on the PCS for Medicare eligibility. Defendants then submitted falsified forms using electronic communication to obtain fraudulently obtain payment for disallowed services.

32.     Concerned, Perkins began investigating prior Medicare PCS and Prior-Authorization Forms and confirmed Cook had forged numerous forms.

33.     Perkins also learned that Defendants had not made required deposits into her 401k account in violation of the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10, et seq., and that Defendant was not paying company-provided insurance premiums despite deducting the employers share of the insurance premiums from paychecks.

34.     On February 21, 2022, Perkins confronted Cook about the forged forms,

illegal conduct, and breach of financial obligations. Perkins informed Cook that the Defendants' conduct was illegal, that these practices must stop immediately, and that Defendants must take all necessary action to comply with all applicable federal and state laws.

35. On February 22, 2022, Cook sent a text message to Perkins and her husband, who was also an STS employee, asking them to meet him at the STS office at 5:00 PM.

36. During that meeting, Cook terminated both Perkins and her husband. Although Cook claimed the terminations were due solely to Defendants' financial circumstances, this was merely a pretext. In reality, Defendants' termination of Perkins and her husband was in retaliation for Perkins' efforts to prevent Defendants from continuing its illegal conduct and to convince Cook to return illegally obtained funds.

37. After her termination, Perkins informed Cook that she had not been paid for her last two days of work. Despite her demand to be paid, Defendants' never paid Perkins for the last two days of work.

### FOR A FIRST CAUSE OF ACTION
(CIVIL RICO CLAIM)

38. All prior allegations are reincorporated herein verbatim.

39. As described above, Defendants have knowingly and willfully used electronic communications in furtherance of their fraudulent scheme to obtain illegal payments from State and Federal agencies through forgery and false certifications, which is racketing activity as defined by 18 U.S.C. § 1961(1) through the fraudulent sales of securities as discussed above and through violation 18 U.S.C. § 1343.

40. Defendants established a pattern of racketeering by repeatedly engaging in

fraudulent activity to obtain unlawful payments for transportation services during the period of Plaintiff's employment and by engaging in regular use of the electronic communications in violation of 18 U.S.C. § 1343.

41. Defendants are engaged in interstate commerce through their provision of regulated health care services and procurement of payment from CMS.

42. Plaintiff has suffered injury as defined in 18 U.S.C. 1964 by reason of Defendants' ongoing violation of 18 U.S.C. 1962 and Defendants' termination of Plaintiff as a part of Defendants' ongoing illegal, fraudulent scheme and in an effort to silence Plaintiff from continue to discovery and decry this illegal conduct.

43. Pursuant to 18 U.S.C. § 1964, Plaintiff is entitled to respectfully request an order from this Court:

   a. ordering Cook to be found liable under this cause of action to divest himself of any interest, direct or indirect, in STS, pursuant to 18 U.S.C. § 1964(a);

   b. imposing reasonable restrictions on the future activities of Defendants found liable under this cause of action prohibiting those Defendants from engaging in the same type of endeavor as the enterprise set forth herein, pursuant to 18 U.S.C. § 1964(a); and

   c. awarding Plaintiff costs and damages, including actual damages, treble damages, litigation costs, and attorney's fees, pursuant to 18 U.S.C. § 1964(c).

**FOR A SECOND CAUSE OF ACTION**
(FCA RETALIATION CLAIM)

44. All prior allegations are reincorporated herein verbatim.

45. On February 22, 2022, Defendants terminated Plaintiff's employment on pretextual grounds. In truth Defendants terminated Relator due to her recent and vocal objection to Cook in her capacity as STS' Operations Director, of STS' and Cook's violations of the False Claims Act by fraudulently obtain payment from governmental health care programs (31 U.S.C. § 3729(a)(1)(A)), submitting false certifications to government healthcare programs (31 U.S.C. § 3729(a)(1)(B)), and retaining government funds when Defendants knew that the government healthcare programs were entitled to repayment (31 U.S.C. § 3729(a)(1)(g)).

46. Plaintiff's refusal to engage in this illegal scheme was motivated by the belief that in doing so, she was preventing the actual or impending violation of various laws, including the FCA. Similarly, Plaintiff's protests were intended to stop imminent or ongoing violations of the FCA.

47. Plaintiff reported her concerns with the foregoing unlawful conduct to Cook and expressed concern that said unlawful conduct would subject STS to potential civil or criminal penalties. Her insistence on compliance with applicable rules governing hospice care was criticized or ignored by Defendants.

48. Plaintiff's actions were activities protected by the FCA. STS' conduct was reasonably likely to deter other employees from engaging in activity protected by the FCA and was in violation of the anti-retaliation provisions in the FCA, 31 U.S.C. § 3730(h) et seq.

49. As a direct and proximate cause of STS' unlawful conduct, Plaintiff has suffered damages, including suffering emotional distress, and she is entitled to all relief required to make her whole, including two (2) times her back pay, interest on her back

pay, litigation costs, and reasonable attorneys' fees.

### FOR A THIRD CAUSE OF ACTION
(VIOLATION OF THE SOUTH CAROLINA PAYMENT OF WAGES ACT)

50. All prior allegations are reincorporated herein verbatim.

51. Pursuant to the terms of Plaintiff's employment, Defendants owed Perkins wages at a rate of at least $68.99 per hour for each hour she worked for Defendants.

52. As described above, Defendants have failed to pay Plaintiff all of the wages due to her for the last two days of her employment, within forty-eight (48) hours of terminating her, or on Defendants' next regular pay day following her termination, violating S.C. Code Ann. §§ 41-10-40 & 50.

53. As described above, Defendants' failure to pay Perkins her wages is knowingly, willfully and with reckless disregard of clearly applicable South Carolina law.

54. Therefore, Perkins is entitled to payment from Defendants equal to the value of her unpaid wages, plus an additional payment equal to two (2) times those lost "wages" as liquidated damages, an award of attorneys' fees and costs, prejudgment interest, and such other relief as the court may deem just and proper.

### FOR A FOURTH CAUSE OF ACTION
(WRONGFUL DISCHARGE)

55. All prior allegations are reincorporated herein verbatim.

56. Perkins was terminated from her position as Operations Director after almost seven years of exemplary and dedicated services immediately after confronting Cook about the forged Medicare and Medicaid forms and other illegal and improper actions set forth herein and demanding all such actions immediately stop.

57. A clear mandate of public policy exists in South Carolina to comply with federal and state law regarding the ambulance transport of Medicare and Medicaid beneficiaries. *See*, 42 C.F.R. § 410.40 et. al, Medicare Manuals and policies, procedures and requirements, and the SCDHSS Provider Manual for Ambulance Services.

51. Likewise, S.C. Code Ann. § 41-10-10, et. seq. represents a clear mandate of public policy prohibiting "employers" like Defendants from depriving employees of their wages.

52. Perkins was terminated for raising concerns about Cook's actions in violating federal and state law and demanding the actions stop and that all appropriate action be taken to comply with federal and state law.

53. As such, Perkins' termination constitutes a wrongful discharge in violation of the clear public policies of South Carolina.

54. The wrongful termination caused Perkins substantial damages for which Defendants are liable.

55. These damages include lost wages, lost benefits, stress and anxiety, emotional pain and suffering, and reputational loss.

56. Further, Defendants' wrongful termination of Perkins was intentional, mean spirited and intended to conceal fraudulent activity. Therefore, Perkins is entitled to an aware of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the entry of judgment against the Defendants for declaratory relief under 18 U.S.C. § 1964(a) & (b); actual and consequential damages in the amount justified by the evidence; statutory damages, treble damages, punitive

damages, recoverable attorney fees, prejudgment interest, the costs of this action and such other relief as this Court may deem just and proper.

(Signature on Following Page)

Respectfully submitted:

s/ Shaun C. Blake
Shaun C. Blake, Esq. Attorney No. 10358
Jenkins M. Mann, Attorney No. 9986
P. Wesley Jackson, Attorney No. 12685
ROGERS LEWIS JACKSON MANN & QUINN, LLC
1901 Main Street, Suite 1200
Columbia, SC 29201
Phone: (803) 256-1268
Fax: (803) 252-3653
Email: sblake@rogerslewis.com
    jmann@rogerslewis.com
    wjackson@rogerslewis.com

s/ Deborah B. Barbier
Deborah B. Barbier Attorney No. 6639
Deborah B. Barbier, LLC
1811 Pickens Street
Columbia, SC 29201
Phone: (803) 445-1032
Fax: (803) 445-1036
Email: dbb@deborahbarbier.com

October 5, 2022                   ATTORNEYS FOR PLAINTIFF